DECISION
{¶ 1} Relator, The Kroger Company ("Kroger"), commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order granting permanent total disability compensation to Danny L. Robinette, and to enter an order denying said compensation.
{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In the decision, the magistrate concluded (1) the commission was not precluded from relying on the report of Dr. Gifford submitted after the deadline set forth at Ohio Adm. Code4121-3-34(C)(4)(a) and (d), but not after the pre-hearing conference, and (2) claimant's initial submission of a report from Dr. Ward to support his permanent total disability application did not preclude claimant from submitting a report from another doctor to rebut Kroger's contention that it had offered claimant employment within his physical capabilities. Accordingly, the magistrate determined the requested writ should be denied.
{¶ 3} Kroger has filed objections to the magistrate's decision:
{¶ 4} "1. The Magistrate erroneously interpreted the time deadlines in O.A.C. 4121-3-34(C) for submission of evidence, thus allowing an untimely medical report from Dr. Bonnie Gifford to be considered by Respondent The Industrial Commission.
{¶ 5} "2. The Magistrate erroneously found that Kroger's job offer was not a bonafide job offer based on Dr. Richard Ward's report, which would have barred Respondent Danny Robinette's (Claimant's) permanent total disability application."
{¶ 6} Kroger's objections reargue issues adequately addressed in the magistrate's decision. As the magistrate properly noted, it is "clear from a plain reading of the rule, that Ohio Adm. Code 4121-3-34(C)(9)'s provision for submission of `additional evidence' up to the date of the pre-hearing conference is not limited to nonmedical evidence, as Kroger asserts here." (Appendix A, ¶ 73.) As to Kroger's second objection, the magistrate aptly noted that Kroger fails to explain "how Ohio Adm. Code 4121-3-34(C)(1)'s provision for medical evidence supporting the filing of a [permanent total disability] application can limit the claimant in rebutting the employer's subsequently submitted evidence regarding a job offer. Certainly, nothing in Ohio Adm. Code 4121-3-34(C)(1) so limits a claimant." (Appendix A, ¶ 77.) Indeed, to impose the limitations Kroger suggests would deprive a party of the opportunity to respond to newly submitted medical evidence from the opposing party. The Ohio Adm. Code provisions at issue should not be interpreted to achieve that end. Accordingly, Kroger's objections to the magistrate's decision are overruled.
{¶ 7} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
BOWMAN, J., and TYACK, P.J., concur.
 IN MANDAMUS
{¶ 8} In this original action, relator, The Kroger Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to Danny L. Robinette, and to enter an order denying said compensation.
Findings of Fact:
{¶ 9} 1. On January 13, 1997, Danny L. Robinette ("claimant") sustained an industrial injury while employed as a "clerk" for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "right fracture os calcis and cuboid; extrusion L4-5 disc; right foot reflex sympathetic dystrophy" and is assigned claim No. 97-458961.
{¶ 10} 2. On December 21, 2000, claimant filed an application for PTD compensation. In support of the application, claimant submitted a report from orthopedic surgeon, Richard M. Ward, M.D., who examined claimant on November 15, 2000. Dr. Ward reported:
{¶ 11} "[H]e is not capable of sustained gainful employment because there is no combination of sit/stand/walk option that would add up to a normal 8 hour work day. He also is severely limited in his ability to bend, squat, crawl and climb, he is limited in his ability to carry and lift heavy objects and he cannot use his legs to operate foot controls."
{¶ 12} 3. Dr. Ward also completed a "Physical Capacity Evaluation" form on which he indicated that, in an eight hour workday, claimant can stand less than one hour, he can walk less than one hour, and he can sit for four hours. Dr. Ward further indicated that claimant can stand without interruption for 15 minutes, he can walk without interruption for 15 minutes, and he can sit without interruption for 30 minutes. He can lift no more than ten pounds.
{¶ 13} 4. On January 16, 2001, the commission issued the "acknowledgement" letter required by Ohio Adm. Code 4121-3-34(C)(2). The letter informed the parties that the PTD application had been filed and that Kroger had until March 17, 2001, which is 60 days from the date of the letter, to submit additional medical evidence. The letter informed the parties that they could request a 30 day extension which could be granted for good cause shown. The letter also informed the parties that the hearing administrator may decide to schedule a pre-hearing conference within approximately 120 days from the date of the filing of the application and that "[n]o new and/or additional evidence will be accepted after this conference except in extraordinary circumstances."
{¶ 14} 5. On February 2, 2001, claimant was examined by Gerald S. Steiman, M.D., on behalf of Kroger. Dr. Steiman reported:
{¶ 15} "Based on a review of Mr. Robinette's past history, medical record review, and physical examination, Mr. Robinette does not demonstrate evidence that he is permanently and totally impaired from all sustained remunerative employment secondary to the recognized allowed conditions within Claim 97-458961."
{¶ 16} 6. On March 29, 2001, Bernard B. Bacevich, M.D., issued a medical file review report on behalf of Kroger. Dr. Bacevich did not examine claimant. Dr. Bacevich reported:
{¶ 17} "Based upon this entire set of medical records, I would be of the opinion that this man can participate in sedentary work activities."
{¶ 18} 7. On April 26, 2001, claimant was examined by commission specialist and orthopedist, James Rutherford, M.D. Dr. Rutherford reported:
{¶ 19} "Mr. Robinette has a 37% permanent partial impairment of the whole person as a result of the claim allowances of claim number 97-458961. * * *
{¶ 20} "Because of the above described orthopedic impairments related to the industrial claim and based only on the orthopedic claim allowances, Mr. Robinette is not capable of physical work activity. * * *"
{¶ 21} 8. On May 18, 2001, the hearing administrator mailed a vocational letter pursuant to Ohio Adm. Code 4121-3-34(C)(6)(c) notifying the parties that they had 45 days from the date of the letter to submit additional vocational information. The May 18, 2001 letter also advised the parties of their right to request a pre-hearing conference within the 45 days.
{¶ 22} 9. On June 28, 2001, Carla Boyer, Kroger's workers' compensation administrator, wrote to claimant stating:
{¶ 23} "* * * It has come to our attention that more than one physician has found that you are capable of "sedentary work," copies of the physician reports are attached.
{¶ 24} "Your own physician, Dr. Ward indicates that you are capable of physical activity that would involve "sitting no more than 4 hours per day; standing and walking approximately 15 minutes per hour and sitting 30 minutes per hour. He states you can lift up to 10# on an occasional basis." Further, a review of your file by Dr. Bacevich indicates that there is no medical evidence to support an inability to use your upper extremity which is in concert with your own physician. Kroger can accommodate those restrictions noted by Dr. Ward.
{¶ 25} "* * * We do know that you are unable to return to your earlier job, but according to the medical reports submitted as a result of recent examinations, you are capable of work with some restrictions. We would like to assist you in a return to gainful employment and have, therefore, reviewed your restrictions with store manager at 31550 Chieftain Dr., Logan, Ohio 43138, Kroger, store number 542. Mr. Landis, the store manager, advises that he would be able to place you into a position appropriate with your restrictions.
{¶ 26} "The position that Kroger offers is a greeter in the Chieftain Dr. store, a job description is attached. This would be a 15 hour job, or since it has been some time since you have worked, we would be able to be flexible in helping you gradually work into a 15 hour work week. Your starting pay will be $11.67 per hour, the same rate as when you went on leave. If there is a difference between your wage and the Average Weekly Wage in your claim we would consider working wage loss for the period and at the rate allowed under the wage loss rule.
{¶ 27} "* * * If we do not hear from you within 30 days, we will assume that you are not interested in the job offer by Kroger. * * *"
{¶ 28} 10. The attachment to Kroger's letter states:
{¶ 29} "DOOR/Customer Greeter
{¶ 30} "Mr. Robinette would be responsible for the followings [sic] essential functions:
{¶ 31} "Greeting customers, handing out flyers.
{¶ 32} "On an occasional basis, may be requested to answer phones at the front desk.
{¶ 33} "A chair and/or stool will be provided. Mr. Robinette can stand, sit and take breaks when needed."
{¶ 34} 11. On June 29, 2001, Kroger requested a pre-hearing conference on grounds that it had made a written offer of employment to claimant.
{¶ 35} 12. On June 29, 2001, at Kroger's request, Dr. Bacevich issued an addendum report stating that he found, based upon his prior examination, that claimant could perform the "Door/Customer Greeter" job.
On July 5, 2001, at Kroger's request, Dr. Steiman issued an addendum report stating that he found, based upon his prior examination, that claimant could perform the "Door/Customer Greeter" job.
{¶ 36} 13. On July 10, 2001, the commission mailed a pre-hearing conference letter setting the conference for July 24, 2001. The letter stated that the issue is:
{¶ 37} "Evidence of refusal to work or evidence of refusal or failure to respond to written job offers of sustained remunerative employment."
{¶ 38} 14. By letter dated July 23, 2001, claimant's counsel informed Ms. Boyer that claimant was refusing Kroger's job offer based upon a July 11, 2001 report from his treating physician, Bonnie D. Gifford, M.D., and the report of Dr. Rutherford. Dr. Gifford's report was attached, stating:
{¶ 39} "Having been Mr. Robinette's physician of record since 8-11-97, I believe that I am the professional best positioned to give an accurate assessment of Mr. Robinette's physical ability to perform work activities. I respectfully disagree with Dr. Ward's conclusion (made on a single examination) that Mr. Robinette is capable of working for 4 hours a day. * * *
{¶ 40} "Dr Ward admirably describes Mr. Robinette's history and physical findings, but fails to mention the medications required to allow Mr. Robinette the limited function he does have. These medications include Zoloft 100 mg, amitriptyline 150 mg, and oxycodone, the last two having significant sedative properties, making them problematic in a work environment. * * *
{¶ 41} "In my medical opinion, Mr. Robinette is permanently totally disabled as a result of his work related injuries, and is not capable of any type of sustained, remunerative employment, even on a part-time basis."
{¶ 42} 15. On July 24, 2001, a hearing administrator held a pre-hearing conference. Thereafter, on July 26, 2001, the hearing administrator issued a "compliance letter" stating:
{¶ 43} "The Employer has submitted a written job offer to Claimant and medical statements from Drs. Bacevich and Steiman stating this job is within claimant's work restrictions.
{¶ 44} "Claimant has submitted a letter dated July 23, 2001 in which he responds to the employer's job offer."
{¶ 45} 16. Following an August 22, 2001 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation. The order states in part:
{¶ 46} "This order is based particularly upon the reports of Drs. Ward, Rutherford, and Gifford.
{¶ 47} "* * *
{¶ 48} "* * * The Staff Hearing Officer has come to the conclusion that the report of Dr. Rutherford is the best supported opinion and consequently adapted. As stated above, a conclusion that the claimant is medically unable to engage in any form of sustained remunerative employment makes an evaluation of the vocational factors, including the vocational evaluations, unnecessary.
{¶ 49} "The start date of the award is established as 11/15/2000, the date of the report of Richard M. Ward, M.D., submitted in support of the initial application. The Staff Hearing Officer notes that the employer made an offer of work which they characterized as within the restrictions listed in Dr. Ward's report. The Staff Hearing Officer relies upon the 07/11/2001 response from Bonie D. Gifford, M.D., for the conclusion that this offer of part-time light work is not within the claimant's physical capacities and is not within the capacities contained in the [sic] Dr. Ward's report, among other reasons, because it fails to take into account the adverse side effects of the medications which the claimant takes to control the symptoms of his allowed conditions. Taking these two reports together, the Staff Hearing Officer finds that the evidence of record does support the conclusion that the claimant has been permanently and totally disabled since the date of Dr. Ward's report."
{¶ 50} 17. On November 19, 2001, relator, The Kroger Company, filed this mandamus action.
Conclusions of Law:
{¶ 51} In this action, relator challenges commission reliance upon Dr. Gifford's report to support the finding that the offer of employment was not within claimant's physical capabilities. Two issues are presented: (1) whether reliance was precluded by submission of Dr. Gifford's report after the deadline set forth at Ohio Adm. Code4121-3-34(C)(4)(a) and (d) but not after the pre-hearing conference, and (2) whether initial support of the application with Dr. Ward's report precluded commission reliance upon Dr. Gifford's report.
{¶ 52} The magistrate finds: (1) submission of Dr. Gifford's report prior to or at the pre-hearing conference permitted the commission to consider the report, and (2) submission of Dr. Ward's report to support the PTD application did not preclude commission reliance upon Dr. Gifford's report.
{¶ 53} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
Turning to the first issue, Ohio Adm. Code 4121-3-34(D)(1)(e) states:
{¶ 54} "If, after hearing, the adjudicator finds that the claimant is offered and refuses and/or fails to accept a bona fide offer of sustained remunerative employment that is made prior to the pre-hearing conference described in paragraph (C)(9) of this rule where there is a written job offer detailing the specific physical/mental requirements and duties of the job that are within the physical/mental capabilities of the claimant, the claimant shall be found not to be permanently and totally disabled."
{¶ 55} Ohio Adm. Code 4121-3-34(C) states in part:
{¶ 56} "(4)(a) The claimant shall ensure that copies of medical records, information, and reports that the claimant intends to introduce and rely on that are relevant to the adjudication of the application for permanent total disability compensation from physicians who treated or consulted the claimant within five years from date of filing of the application for permanent total disability compensation, that may or may not have been previously filed in the workers' compensation claim files, are contained within the file at the time of filing an application for permanent total disability.
{¶ 57} "(b) The employer shall be provided sixty days after the date of the industrial commission acknowledgement letter provided for in paragraph (C)(2) of this rule to submit medical evidence relating to the issue of permanent total disability compensation to the commission.
{¶ 58} "* * *
{¶ 59} "(d) Upon request of either the claimant or the employer and upon good cause shown, the hearing administrator may provide an extension of time, not to exceed thirty days, to obtain the records described in paragraphs (B)(4)(a) and (B)(4)(b) of this rule. Thereafter, no further medical evidence will be admissible without prior approval by a hearing administrator.
{¶ 60} "* * *
{¶ 61} "(7) If the employer or the claimant request, for good cause shown, that a pre-hearing conference be scheduled, the request shall be decided by the hearing administrator. * * *
{¶ 62} "(8) Should a pre-hearing conference be held, the parties should be prepared to discuss the following issues;
{¶ 63} "* * *
{¶ 64} "(b) Evidence of refusal to work or evidence of refusal or failure to respond to written job offers of sustained remunerative employment.
{¶ 65} "* * *
{¶ 66} "(9) * * * After the pre-hearing conference, unless authorized by the hearing administrator, no additional evidence on the issue of permanent and total disability shall be submitted to the claim file. If the parties attempt to submit additional evidence on the issue of permanent and total disability, the evidence will not be admissible on the adjudication of permanent total disability compensation."
{¶ 67} As previously noted, the commission's January 16, 2001 acknowledgement letter gave Kroger 60 days (until March 17, 2001) to submit additional medical evidence in response to the PTD application. The acknowledgement letter also informed, pursuant to Ohio Adm. Code4121-3-34(C)(4)(d) that, upon a showing of good cause, either party could be granted a 30 day extension for the filing of additional medical proof.
{¶ 68} Kroger took advantage of the 60 days and obtained reports from Drs. Steiman and Bacevich which were timely filed by the March 17, 2001 deadline. At this point, claimant had no reason to request a 30 day extension of time and did not do so.
On May 18, 2001, the day following the March 17, 2001 deadline for Kroger's filing of additional medical evidence, the commission mailed a vocational letter notifying the parties that they had 45 days to file additional vocational information and to request a pre-hearing conference.
{¶ 69} On June 29, 2001, within the 45 day deadline, Kroger requested a pre-hearing conference based upon its offer of employment the day before.
{¶ 70} A pre-hearing conference was scheduled for July 24, 2001. The day before the pre-hearing conference, claimant's counsel notified Kroger by letter that claimant was refusing the offer based upon Dr. Gifford's report which was attached to the letter. The hearing administrator, then issued a compliance letter which memorialized the submission of Kroger's written job offer and the addendum reports of Drs. Bacevich and Steiman. The compliance letter also memorialized the submission of claimant's July 23, 2001 letter responding to the job offer.
{¶ 71} While Kroger asserts here that the compliance letter "did not acknowledge any of the medical evidence submitted with claimant's attorney's letter of July 23, 2001" there is no serious contention from Kroger that it did not have a copy of Dr. Gifford's report at the pre-hearing conference. (Kroger's brief at 5.) In any event, the July 23, 2001 letter from claimant's counsel clearly identifies Dr. Gifford's July 11, 2001 report as a basis for refusing the job offer. Under such circumstances, Kroger is in no position here to suggest that it had not received Dr. Gifford's report by the date of the pre-hearing conference.
{¶ 72} According to Kroger, Ohio Adm. Code 4121-3-34 precluded claimant from submitting any additional medical evidence after the filing of his PTD application unless he obtained the 30 day extension provided by Ohio Adm. Code 4121-3-34(C)(4)(d). Kroger further contends that its request for a pre-hearing conference did not bestow a right upon claimant to submit Dr. Gifford's report because Ohio Adm. Code 4121-3-34(C)(9)'s provision regarding the submission of additional evidence must be limited to nonmedical evidence. (Kroger's reply brief at 2.)
{¶ 73} Kroger misreads Ohio Adm. Code 4121-3-34(C). It is clear from a plain reading of the rule, that Ohio Adm. Code 4121-3-34(C)(9)'s provision for submission of "additional evidence" up to the date of the pre-hearing conference is not limited to nonmedical evidence, as Kroger asserts here.
{¶ 74} Moreover, Kroger's reading of Ohio Adm. Code 4121-3-34(C)(9)'s provision for the submission of "additional evidence" as excluding medical evidence, would create a due process of law violation by depriving a claimant of an opportunity to rebut the employer's evidence of a job offer with medical evidence. See Canter v. Indus. Comm. (1986),28 Ohio St.3d 377, 380 (the due process clause forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation.)
{¶ 75} The second issue is whether claimant's initial submission of a report from Dr. Ward to support his PTD application precluded him from submitting a report from another doctor, i.e. Dr. Gifford, to rebut Kroger's contention that it had offered claimant employment within his physical capabilities. To support this contention, Kroger seems to rely upon Ohio Adm. Code 4121-3-34(C)(1) which states in part:[1]
{¶ 76} "Each application for permanent total disability shall be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent and total disability compensation. The medical examination upon which the report is based must be performed within fifteen months prior to the date of filing of the application for permanent and total disability compensation. The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the claimant's inability to work (for example, the claimant will never be able to return to his former position of employment, or will never return to work) resulting from the allowed conditions in the claim(s). * * * If the application for permanent total disability is filed without the required medical evidence, it shall be dismissed without hearing."
{¶ 77} Kroger fails to explain how Ohio Adm. Code 4121-3-34(C)(1)'s provision for medical evidence supporting the filing of a PTD application can limit the claimant in rebutting the employer's subsequently submitted evidence regarding a job offer. Certainly, nothing in Ohio Adm. Code4121-3-34(C)(1) so limits a claimant.
{¶ 78} Moreover, Ohio Adm. Code 4121-3-34(D)(1)(e) does not limit a claimant in the presentation of medical evidence to rebut a written job offer.
{¶ 79} In short, Kroger has failed to show that claimant's reliance upon Dr. Ward's report to support his PTD application somehow precludes him from submitting a report from Dr. Gifford.
{¶ 80} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Kroger's contention is found interspersed throughout its two briefs. See Kroger's merit brief at pages nine and ten and Kroger's reply brief at page six.